**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**


No. 10-3543(E)


PHILIP G. CLINE, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.


Before HAGEL, LANCE, and DAVIS, *Judges.*

**O R D E R**

Before the Court is Philip G. Cline's November 9, 2012, application under the Equal Access to Justice Act, 28 U.S.C. 2412 (d) (EAJA), for an award of attorney fees and expenses in the amount of $13,052.91. The Court has jurisdiction pursuant to 28 U.S.C. § 2412(d)(2)(F) to award reasonable attorney fees and expenses. Mr. Cline filed his EAJA application within the 30-day time period set forth in 28 U.S.C. § 2412(d)(1)(B), and his application satisfies that section's content requirements. *See Scarborough v. Principi,* 541 U.S. 401, 408 (2004). The Secretary has filed a response in which he argues that Mr. Cline's EAJA application should be denied because the Secretary's position was substantially justified. The Secretary makes no other arguments regarding the sufficiency of Mr. Cline's application. Mr. Cline filed a reply rebutting the Secretary's arguments.

Because the Court has not rendered a decision applying the "totality of the circumstances" as set forth in *Stillwell v. Brown*, 6 Vet.App. 291 (1994), in determining whether the Secretary's position was substantially justified in the underlying case of first impression, this matter was referred to a panel of the Court for resolution. Because the Court concludes that the Secretary's position was not substantially justified, the Court will grant Mr. Cline's EAJA application, in part, in the amount of $11,226.31.

**I. BACKGROUND**

On appeal, Mr. Cline contended that the Board erroneously applied an amended version of 38 C.F.R. § 3.156(c) to his case and that this erroneous application resulted in the Board assigning an improper effective date for the grant of disability benefits for post-traumatic stress disorder. A panel of the Court rejected the Secretary's arguments that the amendment–the addition of subsection (c)(2)–was a mere clarification of existing policy, rather than a substantive change. The Court found that the Secretary's position was unsupported by the plain language of either the amended regulation itself or the agency's commentary that accompanied the proposed amendments in the Federal Register. Holding that the Board had, indeed, improperly given retroactive effect to the amended

regulation, the Court vacated the Board decision and remanded the matter for readjudication consistent with that opinion. *Cline v. Shinseki*, 26 Vet.App. 18, 28 (2012).

## II. ANALYSIS

### A. Applicable Law

This Court will award attorney fees to a prevailing party "unless the Court finds that the position of the United States was substantially justified," or unless the other statutory requirements are not met. 28 U.S.C. § 2412(d)(1)(A); *Cycholl v. Principi*, 15 Vet.App. 355, 359 (2001). Because Mr. Cline has alleged, pursuant to 28 U.S.C. § 2412(d)(l)(B), that the Secretary's position was not substantially justified, the Secretary "'has the burden of proving that [his] position was substantially justified in order to defeat the appellant's EAJA application.'" *Vaughn v. Gober*, 14 Vet.App. 92, 95 (2000) (quoting *Stillwell*, 6 Vet.App. at 301). The Secretary must establish that his position was substantially justified at both the Board level and before this Court. *Id.*; *see Locher v. Brown*, 9 Vet.App. 535, 537 (1996); *ZP v. Brown*, 8 Vet.App. 303, 304 (1995).

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has "repeatedly made clear that the substantial justification inquiry requires an analysis of the 'totality of the circumstances' surrounding the government's adoption of a particular position." *Patrick v. Shinseki*, 668 F.3d 1325, 1332 (Fed. Cir. 2011) (quoting *Smith v. Principi*, 343 F.3d 1358, 1362 (Fed. Cir. 2003)). The Federal Circuit also explained that the "totality of the circumstances" inquiry is designed to evaluate the reasonableness of "the position taken by the government on the issue on which the claimant prevailed," taking into consideration other factors "such as the state of the law at the time the position was taken." *Smith*, 343 F.3d at 1363. Although "[t]he totality of the circumstances, by its very description, does not exclude any valid issue from consideration," the Court in *Stillwell* outlined many of the essential factors. *White v. Nicholson*, 412 F.3d 1314, 1317 (Fed. Cir. 2005).

In *Stillwell*, the Court held that

> VA must demonstrate the reasonableness, in law and fact, of the position of . . . VA in a matter before the Court, and of the action or failure to act by . . . VA in a matter before . . . VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.

6 Vet.App. at 302. The Court explained that "[t]wo special circumstances" may also be relevant in determining the reasonableness in VA's litigation position:

> One is the evolution of VA benefits law since the creation of this Court that has often resulted in new, different, or more stringent requirements for adjudication. The

second is that some cases before this Court are ones of first impression involving good faith arguments of the government that are eventually rejected by the Court.

*Id.* at 303. The Court has further clarified that, "[i]n cases of first impression[,] the Court must determine whether the issue presented 'close' questions, and whether the Secretary sought an unreasonable interpretation or resolution of the matter." *Gordon v. Peake*, 22 Vet.App. 265, 269 (2008).

Clarifying the "reasonableness" standard of *Stillwell*, the Federal Circuit instructed that "the 'substantially justified' language means 'justified to a degree that could satisfy a reasonable person,' which is 'no different from the "reasonable basis both in law and fact" formulation' adopted by the vast majority of the appellate courts having addressed the issue." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 701 F.3d 1351, 1360 (Fed. Cir. 2012) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "Put another way, substantially justified means there is a dispute over which reasonable minds could differ." *Norris v. S.E.C.*, 695 F.3d 1261, 1265 (Fed. Cir. 2012) (quoting *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005)). The Federal Circuit has further instructed that "[t]he [g]overnment's 'position' includes both the underlying agency action that gave rise to the civil litigation and the arguments made during the litigation itself." *DGR Associates, Inc. v. United States*, 690 F.3d 1335, 1340 (Fed. Cir. 2012).

The Court will consider the applicable *Stillwell* factors, as well as any other circumstances that may apply, in determining whether the totality of the circumstances supports the reasonableness of VA's position in this case.

## B. *Stillwell* Factors

### *1. Merits*

This factor has not been addressed in a discrete analysis by this Court or the Federal Circuit, but the United States Court of Appeals for the District of Columbia Circuit (D.C. Circuit) has noted that, although "a court's 'merits reasoning may be quite relevant to the resolution of the substantial justification question,' we have cautioned that '[t]he inquiry into the reasonableness of the Government's position . . . may not be collapsed into our antecedent evaluation of the merits, for the EAJA sets forth a distinct legal standard.'" *Halverson v. Stater*, 206 F.3d 1205, 1208 (D.C. Cir. 2000) (quoting *F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996)). In other words, "because 'unreasonable' may have different meanings in different contexts, even the presence of that term or one of its synonyms in the merits decision does not necessarily suggest that the Government will have a difficult time establishing that its position" in the merits litigation, at both the administrative and judicial stages, "was substantially justified." *Id.* (quoting *F.J. Vollmer Co.*, 102 F.3d at 595).

The D.C. Circuit further explained that it is not adequate for a court considering substantial justification on the merits to "[s]imply repeat[ unsuccessful] arguments made by the [agency] before

3

the merits panel without offering any explanation why those arguments showed the [agency]'s position was reasonable." *F.J. Vollmer Co.*, 102 F.3d at 596. As an example of appropriate reasoning by a court, the D.C. Circuit explained: "[W]here an agency's decision was overturned as unsupported by substantial evidence, the agency's position was not substantially justified because it 'lacked a reasonable factual basis.'" *Id*. at 595 (quoting *Cooper v. U.S. R.R. Retirement Bd.*, 24 F.3d 1414, 1417 (D.C. Cir. 1994)).

In this case, the Court found on the merits that, "although the Secretary asserted at oral argument that the addition of subsection (c)(2) was merely intended as a clarification of past practice, there is simply *no evidence* that this is so." *Cline*, 26 Vet.App. at 25 (emphasis added). The Court noted that the only evidence offered by the Secretary–comments published with the proposed amendments–was inadequate because there was "no indication in this statement that it had been VA's regular practice to decline to reconsider prior claims where claimants were found to have provided incomplete evidence." *Id.* In fact, the Court found that the comments seemed to indicate "what VA anticipated would happen in the future *because* of this change." *Id*. The Court also pointed to the plain language of the new subsection and noted that, "when compared to the plain language of pre-amendment § 3.156(c)," the new language "created a bar to reconsideration based on newly associated service department records in particular circumstances where absolutely no bar previously existed." *Id.* It is clear, then, that the Court overturned the Board's decision because it "lacked a reasonable factual basis." *Cooper*, 24 F.3d at 1417.

*2. Conduct and Action or Inaction as Reflected in the Record of Proceedings and the Filings*

The United States Court of Appeals for the Seventh Circuit (Seventh Circuit) has been helpful in clarifying these two applicable *Stillwell* factors, which neither this Court nor the Federal Circuit has expressly addressed. In *Marcus v. Shalala*, 17 F.3d 1033 (7th Cir. 1994), the Secretary of Health and Human Services argued that courts should not distinguish between the administrative and litigation conduct of the Secretary in considering this factor. The Seventh Circuit held that "it is appropriate for the district court to consider the government's litigating position as well as its prelitigation conduct–the action or inaction that gave rise to the litigation." *Marcus*, 17 F.3d at 1036. In other words, "fees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa." *Id.* This analysis involves examining whether the agency in question reasonably implemented the regulation at issue.

Here, Mr. Cline alleged that the Board mistakenly concluded that § 3.156(c)(2) applied retroactively. The Court noted, however, that the Board, although "opaque" in its reasoning for doing so, assigned a "favorable" effective date of May 1999 for the award of benefits for post-traumatic stress disorder. *Cline*, 26 Vet.App. at 21 n.2. In other words, the Board appears to have erred on the side of favoring the veteran. This suggests that VA's conduct and actions in the administrative phase of the proceedings (with the consideration that the facts include an erroneously construed regulation) were more than reasonable. Thus, the Secretary's prelitigation conduct and actions are satisfactory.

4

In the litigation stage, however, the Court concludes that the Secretary's conduct and actions were unreasonable because–although the Secretary argued that the amendment merely clarified, rather than changed, VA policy–the evidence on which VA relied offered "no indication" that this was so. *Id.* at 25. Rather, the Secretary's position created a situation in which Mr. Cline faced "a penalty . . . for conduct that was not previously prohibited." *Id.* at 26. The Secretary's conduct and actions at the litigation phase were thus unreasonable in light of the evidence he submitted.

### 3. Reasons Given and Consistency with Judicial Precedent and VA Policy

These two *Stillwell* factors have a high degree of overlap in this case because much of the Secretary's reasoning is based on his adherence to prior precedent. The Court first notes that, in his response to Mr. Cline's EAJA application, the Secretary did not substantiate his position that the addition of subsection (c)(2) was only a clarifying amendment reflecting existing VA policy, and instead continued to rely only on the regulatory history. As the Court noted in the underlying decision, "the use of the auxiliary verb 'would' [in the regulatory history] indicates what VA anticipated would happen in the future *because* of this change." *Id.* at 25. This means that the amendment to the regulation brought about a shift in VA policy, which makes the retroactive application of the new subsection improper.

In *Felton v. Brown*, the Court concluded that, where there is a "lack of a conflict with adverse precedent, the Secretary's position during this part of the administration phase, i.e., in promulgating the regulation at issue," is justified. 7 Vet.App. 276, 284 (1994). In this case, the Secretary relied on prior similar (but not identical) caselaw from this Court. In interpreting the addition of related subsections of § 3.156(c), the Court agreed that those amendments "were *not* intended to be substantive changes to VA's well-established practice of reconsidering claims based on newly discovered service department records and assigning an effective date as early as the date that the initial claim was filed." *Mayhue v. Shinseki*, 24 Vet.App. 273, 278 (2011) (referring to subsections (c)(1) and (c)(3));[1] *see also Vigil v. Peake*, 22 Vet.App. 63 (2008) (applying the Secretary's statements in interpreting the regulation).

Therefore, even though the Court in the underlying decision found that the Secretary's position–that the addition of subsection (c)(2) was merely a clarification of existing policy–was based on "no evidence" in either the plain language of the regulation or in the Secretary's comments on the proposed amendments, the Secretary could not have predicted that the Court would interpret subsection (c)(2) in such a manner. This is particularly relevant given that, previously, the Court had expressly declined to consider that subsection and had determined that similar provisions were mere clarifications based on the Secretary's commentary.

---

[1] The Court's conclusion in *Mayhue* was based on the same regulatory history on which the Secretary relied here. The Court there expressly declined to address whether the addition of subsection (c)(2) constituted a clarification of existing policy or a substantive change in the law. *See Mayhue*, 24 Vet.App. at 279.

Although prior Court decisions upholding an erroneous statutory interpretation "do[] not . . . resolve the substantial justification inquiry," *Patrick*, 668 F.3d at 1332, the Court does find relevant its own prior findings with respect to the related subsections of this particular regulation, as well as the greater deference given to the Secretary in interpreting his own *regulations*.

## C. Applicable Special Circumstances

### 1. First Impression

As noted above, the Court had previously declined to address whether the addition of subsection (c)(2) was a clarification of existing policy or a substantive change in the law. *Mayhue*, 24 Vet.App. at 279. Accordingly, this was a case of first impression, which qualifies as a special circumstance under *Stillwell*. It is true that "[a]rguments presented in a case of first impression are more likely to be considered substantially justified than those where the Court determines that the Secretary ignored existing law." *Jandreau v. Shinseki*, 23 Vet.App. 12, 14 (2009) (citing *Johnson v. Principi*, 17 Vet.App. 436, 442 (2004)). However, as noted above, "[i]n cases of first impression[,] the Court must determine whether the issue presented 'close' questions, and whether the Secretary sought an unreasonable interpretation or resolution of the matter." *Gordon*, 22 Vet.App. at 269.

Here, because the Court found that there was "no evidence" to support the Secretary's interpretation of the addition of subsection (c)(2) as a clarification of existing policy, it is difficult to deem this a "close" question. *Cline*, 26 Vet.App. at 25; *see also Marcus*, 17 F.3d at 1038 (finding that the government's contention that the questions involved were "close" was controverted by the U.S. Supreme Court's statements that the government policies were "manifestly contrary to the statute" and its arguments made "little sense," and by "strong disapproval" of relevant regulations by several U.S. courts of appeals).

Even if the Court were to assume that this was a "close question," however, the Court's findings on the merits make it difficult to conclude that the Secretary's position was reasonable. This is especially so in light of the Federal Circuit's ruling that, "[w]here . . . the government interprets a statute in a manner that is contrary to its plain language and unsupported by its legislative history, it will prove difficult to establish substantial justification." *Patrick,* 668 F.3d at 1330-31. Thus, on the whole, even though this is a case of first impression, the Court concludes that it did not present a "close" question on which the Secretary had a "reasonable" interpretation. *Cf. Golliday v. Brown*, 7 Vet.App. 249, 255 (1994) (explaining that, because the statute in dispute involved language that was difficult to understand and was very complex, this factor weighed in the government's favor.)

### 2. Dissent

It is also worth noting another special circumstance: The decision on the merits in Mr. Cline's appeal was not unanimous in all respects; one member of the panel dissented from the Court's determination that § 3.156(c)(2) had impermissible retroactive effect. *See Cline*, 26 Vet.App. at 29

(Lance, J., dissenting). Although not dispositive, this is an additional factor the Court may consider when determining whether "a reasonable person could think" the Secretary's position is correct. *Stillwell*, 6 Vet.App. at 302; *see also Ozer v. Principi*, 16 Vet.App. 475, 479 (2002). With the utmost respect to our colleague who dissented on the merits, however, this fact is not strong enough to convince the Court that the Secretary was substantially justified because the first impression analysis was not close. *See Marcus*, 17 F.3d at 1037-38 (holding that, where the government's position was directly contrary to the plain language of the controlling statute, the position was not substantially justified even though other courts had accepted it).

Reviewing the totality of the circumstances, including factors identified by the Court in *Stillwell*, the Court today concludes that the totality of the circumstances in this case weighs against the Secretary. Accordingly, the Court finds that the Secretary has not carried his burden of demonstrating that his position was substantially justified.

## D. Reasonableness

Having established that the Secretary was not substantially justified, the Court is left only to determine the reasonableness of the fees and expenses sought. *See* 28 U.S.C. § 2412(d)(2)(A); *Ussery v. Brown*, 10 Vet.App. 51, 53 (1997). Although the Secretary does not challenge the reasonableness of the amount requested, the Court must nevertheless review the application for facial reasonableness. *See Barrera v. West*, 13 Vet.App. 418, 419 (2000). The burden of demonstrating the reasonableness of the fee request rests with the appellant, the party applying for the fees. *See Blum v. Stenson*, 465 U.S. 886, 897 (1984). The Court notes two areas of concern.

First, although Mr. Cline's attorney did not seek *attorney* fees for hours spent on nonprevailing issues, the 23 *paralegal* hours requested for reviewing and annotating the record before the agency–which presumably pertained to both the prevailing and nonprevailing issues–were not commensurately reduced.[2] *See Vazquez-Flores v. Shinseki*, 26 Vet.App. 9, 15 (holding that fees will not be awarded for "work spent solely on . . . unsuccessful claims"). At the same time, however, the Court recognizes that the record before the agency in this case exceeded 1,900 pages. Accordingly, the Court will reduce the number of paralegal hours to 16. *See id.*

Second, Mr. Cline requests $1,196.60 in "travel expenses" related to oral argument, with no further explanation of the nature of those expenses (i.e., airline tickets, taxi fare, accommodations, etc.). Appl. at 11. The Court finds that this item lacks any justification and is not sufficiently specific. Thus, because (1) Mr. Cline has not provided sufficient information to determine the reasonableness of this expense; and (2) Mr. Cline has the burden of proving the validity of his expenses and the nature of the "travel expenses" has not otherwise been specified, nor has he provided the "[s]pecific documentation . . . necessary to support an application for fees under EAJA," *Baldridge v. Nicholson*, 19 Vet.App. 227, 234 (2005), the Court will deny any reimbursement for

---

[2] The Court notes that there is an asterisk appended to each of the paralegal entries, but there is no corresponding explanation provided. Application (Appl.) at 9.

travel expenses.  As a result, the Court reduces  the amount of expenses awarded to $88.03, which Mr. Cline properly identified as the cost of  United Parcel Service fees, postage, and copying.

In all, the Court will award 54.5 attorney hours at a rate of $177.95 per hour, for a total of $9,698.28; 16 paralegal hours at a rate of $90 per hour, for a total of $1,440; and expenses in the amount of $88.03.  The total amount awarded is $11,226.31.

### III. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that Mr. Cline's November 9, 2012, EAJA application is GRANTED, in part, in the amount of $11,226.31.

DATED: August 30, 2013                                                    PER CURIAM.

LANCE, *Judge*, dissenting: With due respect to my colleagues, I must dissent, as I would hold that the Secretary's position was substantially justified, thereby precluding an EAJA award.

As the majority acknowledges, *ante* at 2, the Federal Circuit has "repeatedly made clear that the substantial justification inquiry requires an analysis of the 'totality of the circumstances' surrounding the government's adoption of a particular position." *Patrick v. Shinseki*, 668 F.3d 1325, 1332 (Fed. Cir. 2011); *see Stillwell v. Brown*, 6 Vet.App. 291, 302 (1994) ("VA must demonstrate the reasonableness, in law and fact, . . . based upon the totality of the circumstances.").  In its opinion, the majority adopts the *Stillwell* factors as a kind of balancing test, finding—based on a factor-by-factor analysis—that the Secretary, in this case, was not substantially justified.  Although I do not disagree that *Stillwell* is instructive as to the kinds of issues that the Court can and should consider, I believe the majority overstates its importance.  *See ante* at 2 ("Although '[t]he totality of the circumstances, by its very description, *does not exclude any valid issue* from consideration,' this Court in *Stillwell* outlined many of the *essential factors*" (emphasis added) (quoting *White v. Nicholson*, 412 F.3d 1314, 1317 (2005))).

Rather than create a quasi-balancing test, as the majority does, I would instead adopt a simpler test derived from the U.S. Supreme Court's opinion in *Pierce v. Underwood*: "[A] position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified *if a reasonable person could think it correct*, that is, if it has a reasonable basis in law and fact."  487 U.S. 552, 566 n.2 (1988) (emphasis added).  Under this formulation, the Court need only inquire whether the government has "demonstrate[d] that it adopted a reasonable, albeit incorrect, interpretation of a particular statute or regulation." *Patrick*, 668 F.3d at 1330.  In other words, the Court ultimately must "'look at the entirety of the government's conduct,' including the agency actions that gave rise to the litigation, 'and make a judgment call whether the government's overall position had a reasonable basis in both law and fact.'" *Id.* at 1333 (quoting *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991)).

For the reasons stated in my dissent on the merits of this case, I think that the government's position was correct. Notwithstanding, I would hold that, based on the totality of the circumstances, the government's overall position on this issue of first impression had a reasonable basis in both law and fact and, therefore, that the Secretary's position was substantially justified.[3] *Pierce*, 487 U.S. at 566 n.2; *see Patrick*, 668 F.3d at 1330; *Chotta v. Shinseki*, 23 Vet.App. at 77 (noting that Court resolution of an issue in favor of the position advocated by an appellant is not dispositive on the issue of substantial justification); *Jandreau v. Shinseki,* 23 Vet.App. 12, 14 (2009) ("Arguments presented in a case of first impression are more likely to be considered substantially justified than those where the Court determines that the Secretary ignored existing caselaw." (citing *Johnson v. Principi*, 17 Vet.App. 436, 442 (2004)). Thus, I must respectfully dissent.

Finally, I note generally that I am troubled by the Secretary's failure to argue substantial justification in response to the vast majority of applications for attorney fees and expenses filed pursuant to the EAJA before this Court. As Chief Justice Roberts recently noted, there is a perception that "[i]n litigating with veterans, the government more often than not takes a position that is substantially unjustified[.]" Transcript of Oral Argument at 52, Astrue v. Ratliff, 130 S. Ct. 2521 (2010) (No. 08-1322). I find instructive the Court's observation in *Stillwell* that, although "'EAJA redresses governmental abuse, it was never intended to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong.'" 6 Vet.App. at 303 (quoting *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993)). In the future, the Secretary would be well served to consider the consequences, both to VA's reputation and to the taxpayer, of conceding that he is substantial unjustified when that may not actually be the case.

---

[3] I note that, while the burden is on the government to demonstrate substantial justification both at the administrative and ligation stages, *see Chotta v. Shinseki*, 23 Vet.App. 73, 76 (2009), the appellant argues only that VA has not proven that its *administrative position* was substantially justified. *See* Appellant's Reply to the Secretary's Response to Appellant's EAJA Application at 1-11.